**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RIVO USA CO., LTD., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| | ) | |
| ARRO CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>COMPLAINT</u>

1.      This is a diversity action for breach of contract, breach of express warranty, and breach of the implied warranties of merchantability and fitness for a particular purpose.

## BACKGROUND

2.      Plaintiff contracted with Defendant for manufacture of chocolate chip cookie mix product ("CCCM Product") for sale at several locations of a large, national multinational retailing concern (Wal-Mart Stores, Inc.) ("Walmart"). Though Defendant agreed to manufacture over 6,000 cases of CCCM Product according to an agreed-upon standard, Defendant failed to do so, and instead manufactured and shipped CCCM Product that produced a pronounced burning sensation for any consumer that tasted the product. The CCCM Product accordingly was not fit for sale, had to be removed from the shelves and destroyed, and Plaintiff has suffered significant damages as a result.

## PARTIES

3.     Plaintiff Rivo USA Co. Ltd. ("Rivo") is a Nevada corporation with its principal place of business in Woodland Hills, California.   Rivo develops and sells confectionery, beverage, dry grocery and tabletop sweetener products for private labels, under license agreements, as well as Rivo-branded products.

4.     Defendant Arro Corporation ("Arro") is an Illinois corporation with its principal place of business in Hodgkins, Illinois.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different States and more than $75,000 is in controversy.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as Defendant resides in this District.

## FACTUAL ALLEGATIONS

7.     Rivo engaged Arro to manufacture CCCM Product licensed by Rivo from The Cheesecake Factory at Home ("TCF"), via licensing agent Creative Artist Agency ("CAA").

8.     Arro is a food manufacturing and packaging company.   Arro advertises on its website that "Arro [i]s [s]wift, especially in matters of speed-to-market."   http://www.arro.com (last visited Nov. 10, 2017).

9.     Rivo arranged to license several products from TCF, including the CCCM Product.   The CCCM Product is marketed and sold as The Cheesecake Factory At Home Chocolate Chip Cookies Premium Cookie Mix.   Other TCF products Rivo arranged to license

2

and sell include a vanilla cupcake product, a chocolate cupcake product, and a "snickerdoodle" cookie product.

10.     In October 2016, Rivo secured a retail sales agreement with Walmart to sell TCF CCCM Product, as well as the vanilla cupcake, chocolate cupcake, and "snickerdoodle" cookie products, in over 2,500 stores, depending on the item.

11.     On January 18, 2017, Sam Ristich contacted Arro on behalf of Rivo.

12.     As of January 2017 and at all time periods pertinent to this Complaint, Ristich acted in an operational role on behalf of Rivo.  During the time periods pertinent to this Complaint, Ristich acted as Rivo's agent, including, specifically, for the purpose of communicating with manufacturers such as Arro.  During the course of the parties' dealings, Arro understood Ristich to be acting by and on behalf of Rivo.

13.     Ristich maintains and has maintained a Rivo email account, and his email correspondences with Arro noted his role in "Operations" on behalf of Rivo.

14.     On January 18, 2017, Arro's Director of Business Development quoted Rivo a fee of $.21 per carton to manufacture CCCM Product or an alternative option whereby Arro would develop the CCCM Product  and charge Rivo for finished goods.

15.     Rivo accepted the proposed finished goods option. Under the parties' agreement, Rivo would pay Arro a price certain for CCCM Product on a per-case basis, with the price to be agreed upon after completion of a process by which TCF would sign off on sample CCCM Product, as described below.

16.     In January 2017, Rivo advised Arro that the CCCM Product in question would be stocked at Walmart stores, for sale to the general public.

3

17.     During the January-March 2017 time period, Rivo and Arro also reached agreements for Arro to manufacture vanilla cupcake, chocolate cupcake, and "snickerdoodle" cookie products (as licensed from TCF), also for distribution at Walmart retail locations.

18.     On or about March 10th, 2017, Arro manufactured sample CCCM Product after receiving a recitation of the specific ingredients to be included in The Cheesecake Factory At Home Chocolate Chip Cookies Premium Cookie Mix on or about February 23, 2017 from The Cheesecake Factory Bakery's Vice President Research & Development, communicated via an e-mail from Sam Ristich.  Arro referred to the product formula that it used to create this sample as formula B12 P56 #1.

19.     TCF signed off on the March 10, 2017 sample CCCM Product provided by Arro on or about March 14, 2017, and such approval was communicated to Arro.  In supplying its sign-off on the sample CCCM Product produced by Arro, TCF indicated that it approved of the taste and quality of the sample CCCM Product batch (the "Sample Standard").

20.     Arro's Director of Business Development sent Rivo a CCCM Product price quotation via e-mail on March 14, 2017, of $10.08 per case for 12,000 cases of CCCM Product, with six individual CCCM Product packets ("units") per case, each packaged and ready to be sold in a retail environment.  The parties ultimately agreed upon a price of $8.22 per case on or about March 24th, 2017.

21.     Arro acknowledged, understood, and warranted, that it would undertake a larger-scale production of the CCCM Product for Rivo conforming to the Sample Standard ("the Expanded CCCM Product Production").

22.     Rivo and Arro contracted for the purchase, and sale, respectively, of 13,000 cases of CCCM Product on March 30th, 2017, at a price of $8.22 per case.  On that date, Rivo

4

transmitted two CCCM Product purchase orders to Arro, each in the amount of 6,500 cases, and each reflecting a purchase price of $8.22 per case.

23.     On April 7, 2017, Arro stated, via its Director of Business Development, Dan Matyus, that Arro "will have the following items produced and available for pickup on Saturday, April 22nd … Chocolate Chip Cookie production: 13,000 cases."

24.     That same afternoon, Rivo clarified via email that, for the first tranche of CCCM Product required to fill Walmart's initial orders, Rivo would only require 6,566 cases of CCCM Product (as opposed to the 13,000 cases offered by Arro to be imminently produced).  The email stated, in full:

> Hi Dan,
>
> For our opening order we have the following quantities from Walmart:

|  | TCF Chocolate Chunk Cookie #2050300 | TCF Snickerdoodle Cookie #2050301 | TCF Vanilla Cupcake W/ Glaze #2050301 | TCF Chocolate Cupcake W/ Frosting #2050311 |
|---|---|---|---|---|
| Total Cases | 6566 | 4846 | 5856 | 6706 |

25.     On April 25, 2017, Arro caused to be shipped 2,400 cases of CCCM Product from its production facility in Hodgkins, Illinois to Rivo's leased warehouse facility space in Bolingbrook, Ilinois.

26.     On May 3, 2017, Arro caused to be shipped from its Hodgkins, Illinois facility an additional 5,222 cases of CCCM Product to Rivo's warehouse facility in Bolingbrook, IL.

5

27.     In late April and early May 2017, Rivo shipped 6,442 cases of CCCM Product to Walmart Distribution Centers (DC's) for redistribution to Walmart's retail location(s) totaling 38,652 units of the TCF Chocolate Chip Cookies Premium Cookie Mix product.

28.     By May 12, 2017, Arro had shipped to Rivo a total of 11,782 cases of CCCM Product from the Expanded CCCM Product Production, or a total of 70,692 individual units of The Cheesecake Factory At Home Chocolate Chip Cookies Premium Cookie Mix product.  As of May 12, 2017, Rivo had 5,340 cases of the CCCM Product from the Expanded CCCM Product Production on hand at Rivo-affiliated facilities.

29.     On May 9, 2017, Rivo's CEO received a call from two representatives at CAA regarding consumer complaints that had been received concerning the CCCM Product shipped by Arro— as labeled and sold in Walmart stores, The Cheesecake Factory At Home Chocolate Chip Cookies Premium Cookie Mix.  Specifically, two consumers had complained to Walmart to the effect that they experienced a burning sensation when they tasted the CCCM Product.

30.     The CAA representatives advised that TCF's Vice President of Research & Development at The Cheesecake Factory Bakery had baked a sample of the CCCM Product shipped by Arro and stocked in the applicable Walmart stores (from the Expanded CCCM Product Production) and discovered that he, too, noted a pronounced defect in such baked sample, specifically that the taste was highly displeasing and akin to a burning sensation.

31.     Rivo immediately made contact with Arro to alert them of the issues with the CCCM Product in the Expanded CCCM Product Production reported on the CAA call.  Rivo's CEO (Warren Ezra) asked Arro to run tests and bake up the CCCM Product immediately to understand the cause and extent of the problem.

32.     On May 10, 2017, Rivo began gathering data, and additional information, from various sources, including CAA, Arro, TCF, and Rivo's logistics personnel, to determine the cause of the problem.

33.     Arro, TCF, and Rivo communicated via teleconference on May 10, 2017 to address the situation. TCF through CAA asked Rivo to provide CCCM Product batch numbers, stock tracking information, as well as detailed reports on stock available in warehouses and on shelf store. Rivo supplied both such reports on the afternoon of May 11, 2017.

34.     Rivo also contacted a Walmart buyer representative via email on May 10, 2017.

35.     On May 11, 2017, Arro sent Rivo and TCF a memorandum with subject header "TCF Chocolate Chip Cookies." Ex. A. The header to the memorandum indicated its author as "Arro Quality and Technical Services Departments." The memorandum set forth that Arro had just undertaken a taste test of a "control sample" of the CCCM Product produced according to the Sample Standard (a "control testing sample"), and compared this against a sample from the Expanded CCCM Product Production. The memorandum acknowledged what Arro deemed a stronger "back-end spice note" taste in the Expanded CCCM Product Production than in the control testing sample. In the memo, Arro attributed this defect in the Expanded CCCM Product Production to "molasses" being "intensified though the high-speed production blending in comparison to the mixers used in our development lab." Arro went on to note in the memo that molasses "is not an item that we use in our current flavor portfolio and it is reacting differently than we expected."

36.     Rivo conducted numerous taste tests of discrete samples of the CCCM Product from the Expanded CCCM Product Production (on the order of 20 such tests). CAA also

7

conducted similar such tests— upon information and belief, roughly five in total. The results of such tests confirmed the same product defect (in the form of a burning sensation to the taster).

37.     TCF requested a full withdrawal of the CCCM Product from Walmart's shelves.

38.     Rivo sent a filled-out Walmart withdrawal application to CAA at 11:37 am PST May 12, 2017, stating that the application in question was for a full withdrawal and destruction of the CCCM Product in question.

39.     When Walmart implements a withdraw-and-destroy order, its personnel pull all affected cartons off the shelves, open the cartons, the individual product bags are cut open, and (in the instance of a baking mix product), the affected powder is disposed of in the trash. All affected cases of product not yet on the shelves are also opened, the boxes opened, the bags cut open and the contents of each bag destroyed.

40.     By June 7, 2017, all remaining stock of the CCCM Product from the Expanded CCCM Product Production had been destroyed, both at Walmart facilities, and in tandem, at Rivo-affiliated facilities in Illinois. In total, Rivo was forced to destroy 21,960 pounds of CCCM Product at Rivo-affiliated facilities.

41.     On June 12, 2017, Rivo's CEO, Warren Ezra, received an email from Arro's Technical Director, Robert Pekelnicky. Ex. B. That email stated,

> We have completed our investigation of the TCF Chocolate Chip Cookie. I will issue you a more detail[ed] report this week[.] Our completed findings clearly identify the level of vanillin in the formula as the root cause[.] We will be re-formulating the dry mix product for submission to you for presentation to TCF. Our plan is to have variations of the mix to you for presentation to you July 29-July 20. If you have any questions please contact me.

*Id.*

42.     By "root cause," Mr. Pekelnicky was referring to the root cause of the defect that affected the Expanded CCCM Product Production, as to which Rivo was first alerted on May 9, 2017.

43.     Since May 11, 2017, Walmart has assessed CCCM Product withdrawal fees against Rivo, totaling roughly $275,000.  To date, Arro has refused to pay any such assessed withdrawal fees, all of which were assessed because of the defective nature of the CCCM Product supplied in the Expanded CCCM Product Production by Arro.

44.     Walmart has assessed additional costs against Rivo for lost sales associated with the CCCM Product.  To date, these additional costs total roughly $500,000.

45.     Defendant's provision of defective CCCM Product has caused Plaintiff to suffer substantial damages.  In addition to the withdrawal fees and lost sales costs imposed by Walmart, the damages suffered by Plaintiff include shipping costs, and product-destruction costs.

46.     Plaintiff has incurred further costs in the form of monies owed to TCF for minimum guarantees for license fees.

47.     Defendant's breach of contract and breach of warranty have caused Plaintiff to suffer lost profits, and additionally impaired Plaintiff's commercial relationships with third parties, causing additional financial harm, and expected future financial harm. Such damages were in all instances foreseeable to Defendant.

48.     In total, the damages sustained by Plaintiff greatly exceed $75,000.

## COUNT I
## Breach of Contract

49.     Each of the preceding allegations is incorporated by reference.

50.     In March 2017, the parties entered into a single contract for the manufacture of 13,000 cases of CCCM Product at $8.22 per case according to the Sample Standard.

51.     In the alternative, the parties entered into two contracts in March 2017 for the manufacture of 6,500 cases each of CCCM Product at $8.22 per case according to the Sample Standard.

52.     Until that juncture at which Plaintiff was notified of the defect in Defendant's chocolate chip cookie mix product, Plaintiff satisfied any and all obligations incumbent upon it under its CCCM Product agreement(s) with Defendant.

53.     Arro breached the parties' CCCM Product agreement(s) by failing to manufacture the CCCM Product in the Expanded CCCM Product Production according to the Sample Standard.

54.      As a result of Arro's breach, Plaintiff has suffered extensive damages, including but not limited to shipping costs, lost sales costs imposed by Walmart, product-destruction costs, lost sales, withdrawal fees assessed by Walmart, and lost profits.

## COUNT II
## Breach of Express Warranty

55.     Each of the preceding allegations is incorporated by reference.

56.     Plaintiff and Defendant did contract for the purchase (by Plaintiff) of CCCM Product, at a price of $8.22 per case.

57.     In consideration of and as part of the sale, a warranty arose.

58.     By virtue of submitting the sample CCCM Product for review and approval in March 2017, Arro acknowledged and understood, and warranted, that the CCCM Product

produced via the Expanded CCCM Product Production would conform to the quality and taste of the sample CCCM Product.

59.     Rivo relied on this express warranty by Defendant.

60.     Defendant breached such express warranty, causing extensive damages to Plaintiff.

61.     Plaintiff gave Defendant notice of the breach by Defendant of its warranty on or about May 9, 2017.

62.     Of the CCCM Product that Plaintiff agreed to purchase from Defendant, none of it was as warranted at the time of the sale and delivery.

63.     The defect in the 70,692 units of CCCM Product that resulted from Defendant's Expanded CCCM Product Production, namely, that it produced a burning sensation upon tasting, existed at the time the goods left Arro's control and were shipped to Plaintiff.

64.     As a result of Arro's breach, Plaintiff has suffered extensive damages, including but not limited to shipping costs, lost sales costs imposed by Walmart, product-destruction costs, lost sales, withdrawal fees assessed by Walmart, and lost profits.

**COUNT III**
**Breach of the Implied Warranty of Merchantability**
**(810 ILCS 5/2-314)**

65.     Each of the preceding allegations are incorporated by reference.

66.     The 70,692 units of CCCM Product that Defendant did cause to be shipped to Plaintiff did not pass without objection in the trade under the contract description.

67.     The 70,692 units of CCCM Product that Defendant did cause to be shipped to Plaintiff were not of fair average quality within the description.

11

68.    The 70,692 units of CCCM Product that Defendant did cause to be shipped to Plaintiff were not fit for the ordinary purposes for which such goods are used, namely, human consumption as chocolate chip cookie product.

69.     Defendant did breach the implied warranty of merchantability with respect to all of the CCCM Product that Defendant caused to be shipped to Plaintiff in April and May 2017.

70.    As a result of Arro's breach, Plaintiff has suffered extensive damages, including but not limited to shipping costs, lost sales costs imposed by Walmart, product-destruction costs, lost sales, withdrawal fees assessed by Walmart, and lost profits.

**COUNT IV**
**Breach of the Implied Warranty of Fitness for a Particular Purpose**
**(810 ILCS 5/2-315)**

71.    Each of the preceding allegations are incorporated by reference.

72.    Defendant had reason to know that Plaintiff needed CCCM Product that would satisfy third party TCF's product approval requirements.

73.    Plaintiff did rely on Defendant to produce CCCM Product that would satisfy third party TCF's requirements.

74.    Defendant had reason to know of Plaintiff's reliance upon Defendant to produce CCCM Product that would satisfy third party TCF's product approval requirements.

75.    Defendant did breach the implied warranty of fitness for a particular purpose with respect to all 70,692 units of CCCM Product that Defendant caused to be shipped to Plaintiff in April and May 2017.

76.    As a result of Arro's breach, Plaintiff has suffered extensive damages, including but not limited to shipping costs, lost sales costs imposed by Walmart, product-destruction costs, lost sales, withdrawal fees assessed by Walmart, and lost profits.

12

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff does hereby request that the Court order Defendant to pay

Plaintiff:

- full reimbursement for the shipping costs incurred by Plaintiff in conjunction with the CCCM Product produced as part of the Expanded CCCM Product Production;

- full reimbursement for the product destruction costs incurred by Plaintiff in conjunction with the CCCM Product produced as part of the Expanded CCCM Product Production;

- full reimbursement for the Walmart-assessed withdrawal fees incurred by Plaintiff in conjunction with the CCCM Product produced as part of the Expanded CCCM Product Production;

- full reimbursement for the lost sales costs imposed by Walmart against Plaintiff in conjunction with the CCCM Product produced as part of the Expanded CCCM Product Production;

- full reimbursement for the royalty minimum guarantees paid to TCF for license fees in conjunction with the CCCM Product;

- a damage award for lost profits resulting from the Expanded CCCM Product Production;

- litigation costs, and

an award of such other relief as the Court should consider necessary and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury for all of

the issues pled so triable.

Respectfully submitted,

_____/s/_____
W. Clifton Holmes
The Holmes Law Group, Ltd.
350 N. Orleans St.
Suite 9000N
Chicago, IL 60654
holmes@theholmeslawgroup.com
(312) 721-0779 (t)
*Counsel for Plaintiff*

November 22, 2017